IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-593-KS

TAMMY LYNN SMITH, )
)
Plaintiff, )
)
v. )
) **ORDER**
FRANK BISIGNANO,[1] Commissioner )
of Social Security Administration, )
)
)
Defendant. )

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision of the Social Security Administration, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Tammy Lynn Baldwin ("Plaintiff") filed this action seeking judicial review of the denial of her application for supplemental security income benefits ("SSI"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and the matter is ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the court affirms the Commissioner's decision.

---

[1] Frank Bisignano is now Commissioner of Social Security and therefore is substituted as the defendant to this action. *See* Fed. R. Civ. P. 25(d).

Plaintiff applied for SSI on May 6, 2022. (R. 30, 211–17.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 30, 77, 84.) On April 11, 2024, a telephonic hearing was held before Administrative Law Judge ("ALJ") Peter N. Koclanes, who issued an unfavorable decision on April 25, 2024. (R. 30–69.) On September 3, 2024, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On October 18, 2024, Plaintiff initiated this action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court

should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the

3

claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III.   ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 6, 2022, the date of Plaintiff's application. (R. 32.) Next, the ALJ determined Plaintiff has severe impairments of lupus, degenerative disc disease of the lumbar spine with neuropathy, asthma, diabetes mellitus, migraines, and obesity. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 33.) The ALJ expressly considered Listings 1.15 and 1.16 in connection with Plaintiff's spinal disorder, 3.03 for Plaintiff's asthma, 11.02 and SSR 19–4p in connection with Plaintiff's migraine headaches, 14.02 in connection with Plaintiff's lupus, 9.00 and SSR 14–2p in connection with Plaintiff's diabetes, and SSR 19–2p in connection with Plaintiff's obesity. (R. 33–36.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she is limited to never climbing ladders/ropes/scaffolds or crawling; frequently climbing ramps/stairs, balancing, stooping, kneeling, and crouching; avoiding concentrated exposure to vibrations and hazards, such as moving mechanical parts and unprotected heights; and avoiding concentrated exposure to pulmonary irritants, such as odors, fumes, dust, gases, and poorly ventilated areas.

(R. 36.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other"), based on the requirements of 20 C.F.R. § 416.929 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 36–37.) The ALJ explained that Plaintiff's statements about her symptoms "are inconsistent because [Plaintiff] only had slight deficits on exams with positive response over time to conservative treatment measures." (R. 37.)

At step four, the ALJ concluded that Plaintiff has no past relevant work. (R. 42.) At step five, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience, and RFC, namely: price marker (DOT #209.587-034), package tagger (DOT #222.587-038), and routing clerk (DOT #222.687-022). (R. 42.) The ALJ concluded Plaintiff has not been under a disability since May 6, 2022, the application date. (R. 43.)

## IV.   Plaintiff's Argument

Plaintiff argues that substantial evidence does not support the RFC assessment because the ALJ failed to properly develop the record. (Pl.'s Br. [DE #14] at 5–10; Pl.'s Reply [DE #17].) More specifically, Plaintiff contends the ALJ erred "by discounting the opinion evidence of record and then crafting an RFC out of whole cloth." (Pl.'s Br. at 6.) Plaintiff argues the ALJ should have "request[ed] an opinion from one of Plaintiff's treating physicians, order[ed] a consultative examination, or obtain[ed] testimony from a medical expert." (*Id.*) According to Plaintiff, the ALJ's analysis of the medical opinion evidence and assessment of Plaintiff's RFC without additional medical opinion is contrary to *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("In light of the extensive treatment Lewis received for her various conditions, the ALJ's designation of Lewis' course of treatment as 'conservative' amounts to improperly 'playing doctor' in contravention of the requirements of applicable regulations." (first citing 20 C.F..R. §§ 404.1529, 416.929; and then citing *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015))). (Pl.'s Br. at 6–7.) The court disagrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 416.945(a). The RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (citing 20

C.F.R. § 416.946(c)). "[T]he law does not require the RFC to mirror a medical opinion; rather, the ALJ must consider the record as a whole, including 'medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Vanderpool v. Berryhill*, No. 5:18-CV-44-RJ, 2019 WL 118414, at *4 (E.D.N.C. Jan. 7, 2019) (quoting *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005)). While an ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate," *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), it is the "claimant's burden to establish how medically-documented impairments result in functional limitation," *Battle v. Berryhill*, No. 5:15-CV-537-D, 2017 WL 782562, at *4 (E.D.N.C. Jan. 24, 2017), *M. & R. adopted*, 2017 WL 780795 (E.D.N.C. Feb. 28, 2017); *see also* 20 C.F.R. § 416.912.

Here, the ALJ assessed Plaintiff's RFC based upon consideration of medical evidence, medical opinions from state agency consultants at the initial and reconsideration levels, and Plaintiff's statements about her symptoms. (R. 36–42.) That is what an ALJ is supposed to do. *See* 20 C.F.R. § 416.945(a); SSR 96–8p, 1996 WL 374184, at *1.

Plaintiff's argument that the ALJ erred because he did not procure an additional medical opinion to address the functional limitations of Plaintiff's impairments is not supported by *Lewis*, 858 F.3d at 869. (*See* Pl.'s Br. at 6–7 (arguing that "the ALJ engage[d] in playing doctor . . . by creating an RFC without any guidance from a professional").) The portion of *Lewis* referenced by Plaintiff

7

addresses an ALJ's mischaracterization of a claimant's medical treatment as "conservative" when no medical evidence of record supported the ALJ's characterization. *Lewis*, 858 F.3d at 869. Plaintiff does not argue that occurred here. (Pl.'s Br. at 5–10.) As explained above, it is the ALJ's job to assess the RFC, and there is no requirement that the RFC mirror a particular medical opinion. *See Felton-Miller*, 459 F. App'x at 230–31; *Vanderpool*, 2019 WL 118414, at *4.

To the extent Plaintiff rests on the more nuanced position that the ALJ "lacked the insight, education or training" to assess Plaintiff's RFC-related limitations based on "raw imaging data" in the medical evidence (Pl.'s Br. at 8), that argument is misplaced, too. In assessing a claimant's RFC, an ALJ must consider, among other things, "medical signs and laboratory findings." SSR 96–8p, 1996 WL 374184, at *5. There is no legal requirement that an ALJ procure "professional guidance" from a medical provider before considering such medical evidence and assessing the RFC. (*Contra* Pl.'s Br. at 9.) Here, Plaintiff makes no showing as to how the record before the ALJ was inadequate, other than by speculating that "a medical professional may have determined Plaintiff had greater limitations than [the RFC] crafted by the ALJ." (Pl.'s Br. at 10); *see Cook*, 783 F.2d at 1173. Furthermore, the ALJ cogently explained why he assessed a more limited RFC than the state agency consultant doctors, who reviewed the medical imaging evidence Plaintiff identifies as requiring additional medical interpretation. (R. 41.) Accordingly, the court discerns no failure of the ALJ to properly develop the record.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

This 24th day of February 2026.

KIMBERLY A. SWANK
United States Magistrate Judge